T. Paul Kane, J.
This is an article 78 proceeding in which the petitioner seeks to have a determination made by the respondent Public Employment Relations Board (PERB) set aside and annulled, which determination was made after a hearing to resolve a representation dispute (CPLR 7803, subd. 4). A motion has been made by the respondent for an order dismissing the petition upon the ground that the determination sought to be reviewed is not final within the meaning of CPLR 7801 (subd. 1) (CPLR 7804, subd. [f]).
In its final report to the Governor, the Committee on Public Employee Relations referred to the determination of representation status as follows: 11 The most uncharted and difficult problem area in the development of arrangements for the determination of the representation status is that of initial determination of the employee-employer unit identifying the employees to be represented ” (Governor’s Committee on Public Employee Relations, Final Report, March 31, 1966, p. 23). The brief history of the Public Employees’ Fair Employment Act (Civil Service Law, art. 14; L. 1967, eh. 392, also known as the *746 Taylor Law) since its passage in 1967 demonstrates that the Governor’s Committee indeed characterized the issue of representation with exactness.
The very first order of the PERB directing the State Negotiating Committee not to negotiate exclusively with one association, became the subject of court action which found resolution in the Court of Appeals. (Matter of Civil Serv. Assn. v. Helsby, 21 N Y 2d 541) and determined the organization and representation of public employees for the first year of contract negotiations.
At the time of the first court encounter, implementation of the Taylor Law had not advanced substantially beyond the recognition by the Governor, through the Chairman of the State Negotiating Committee, of certain negotiating units for State employees (Civil Service Law, § 204). An interested organization opposed the recognition of the general unit which precipitated the order of PERB directing the public employer from exclusive negotiations pending its disposition of the represen-' tation dispute. The Court of Appeals held that PERB did not have the power to issue the provisional order (Matter of Civil Serv. Assn. v. Helsby, supra). Portions of the majority and dissenting opinions are particularly relevant to the within application. “ An organization which disputes the representation status of an employer-recognized organization may invoke the procedures of the Board under sections 205 and 207 to obtain Board certification. In that event it may displace the previously employer-recognized organization and the Board, under paragraph (k) of subdivision 5 of section 205, may ‘ exercise such other powers as may be appropriate to effectuate the purposes and provisions of this article. ’ Presumably, the Board may then issue orders to enforce its determinations, although the statute contains no other direct delegation of such powers (see § 210, subd. 4).” (21 N Y 2d 547.)
The dissenting opinion also alluded to the powers of PERB after a representation determination had been made: “ If the Public Employment Relations Board were to make a representation determination, pursuant to section 207 of the Civil Service Law, the court, to protect employee rights guaranteed by section 203, would — after such determination has been made — undoubtedly enforce a Board order requiring the public employer to desist from recognizing or negotiating with an uncertified union. ” (21 N Y 2d 552.)
A genuine representation issue was raised when petitions were filed protesting the recognition by the Governor on November 15,1967 of the general unit. On August 28,1968, after some *747 40 days of hearings, the Director of Representation of PERB rendered a decision which was appealed to PERB, and on November 27,1968, a determination was made rejecting the general unit approach and defining five negotiating units as being appropriate (Civil Service Law, § 207, subd. 1). It is this determination which is the subject matter of this proceeding (CPLR 7803, subd. 4). Also submitted for decision is the legality of the order of PERB dated November 27, 1968 implementing the underlying determination (CPLR 7803, subd. 3).
First to be resolved is the motion to dismiss the petition upon the ground that the determination which petitioner seeks to review is not a final determination (CPLR 7804, subd. [f]). After a close examination of article 14 of the Civil Service Law, and particularly section 207, and the informative opinion of the Court of Appeals (21 N Y 2d 541), I conclude that the determination of November 27,1968 is not a final determination within the meaning of CPLR 7801 (subd. 1). Until a determination of representation status is made, the proceedings cannot be deemed to be final. This is not to say that while resolving disputes concerning representation status PERB may establish a pattern which seemingly excludes or dissatisfies an interested organization such as petitioner, but however predictable the eventual outcome, the argument of “ finality ” cannot be accepted. Section 207 sets forth a step by step procedure for resolving representation disputes which by its very language demonstrates a progression in resolution, rather than unrelated conclusions. Section -203, granting public employees the right to be represented by employee organizations to negotiate collectively with their employers — is the key provision of the Taylor Law, and the one to be safeguarded. To permit court intervention while the procedures of section 207 are being implemented would have a deleterious effect upon the rights granted to public employees in section 203, as well as creating intolerable confusion and disruption of orderly processes in this 1 ‘ uncharted and difficult problem area ’ ’.
In another, and perhaps more practical approach, nonfinality is apparent. The initial step of defining the appropriate negotiating unit is followed by the ascertainment of the public employees choice. At this second stage it is very possible that the first step decision may be shown to be without basis, and thereby determining in an altogether different manner the ultimate resolution of the dispute. Yet permitting court resolution or review between stages would frustrate the intended order and design, if not destroy an intelligible result. The *748 law, logic and reason compels a conclusion that, absent a clear abuse of power or violation of law, review of such decisions should be only permitted upon the certification of an employee organization or organizations.
This is not a point at which, as petitioner concludes, unchallenged representation status is granted. The term ‘ ‘ unchallenged ” as used in subdivision (e) of section 208 refers to the termination of challenges within the internal machinery, and not preclusion from judicial review.
Petitioners have presented, and with persuasiveness, advanced arguments against the unit representation. However attractive these arguments, I can only conclude that, while the advisability of such an approach has been cast in doubt, the Legislature gave PERB the power, (and duty) to do what it has done, and the wisdom of such an approach is not to be regarded by the courts in reviewing acts of administrative agencies.
Accordingly, judgment may enter dismissing the petition and vacating the stay heretofore granted upon the ground that the determination before the court is not a final determination (CPLR 7801, subd. 1).
The application to vacate the order of PERB restraining the Governor from negotiating with petitioner is denied since as a determination it was not made in violation of law, nor was it arbitrary and capricious, or an abuse of discretion (CPLR 7803, subd. 3; Civil Service Law, §§ 205, 207; Matter of Civil Serv. Assn. v. Helsby, supra).